UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

SEAN P. REILLY,

      Petitioner,

v.                                                    Case No. 4:21cv223-WS-HTC

RICKY D. DIXON,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Sean P. Reilly, proceeding *pro se*, filed an amended petition under 28 U.S.C. § 2254, raising eight (8) grounds for relief. ECF Doc. 21. After considering the amended petition, the record, the State's responses, ECF Docs. 16 and 26, and Petitioner's replies, ECF Docs. 25 and 32,[1] the undersigned recommends the amended petition be DENIED without an evidentiary hearing.

## I.    BACKGROUND

### A.    Offense and Conviction

Petitioner challenges his convictions in the circuit court of Leon County, Florida, in case 2014-CF-17, for aggravated stalking of his ex-girlfriend, J.D., from

---

[1] After the Secretary responded, ECF Doc. 16, to the initial petition, Petitioner moved to amend the petition to add an additional ground, ECF Doc. 20, and the Court accepted the amended petition and ordered the Secretary to respond to only the additional ground. ECF Doc. 24. The Secretary filed its response to only the newly added ground in ECF Doc. 26. The Petitioner replied to the original response at ECF Doc. 25 and to the response to the newly added ground in ECF Doc. 32.

January 2007 to October 2013, in violation of Fla. Stat. § 784.048(4).[2]  At the bench

trial in 2015, the State offered evidence of the following course of harassing conduct

over those six years.  *See* Trial Transcript, ECF Doc. 16-10.

J.D. began reporting harassment by Petitioner in October of 2006 (slashing of

tires and harassing phone calls), *id.* at 18, and later, after Petitioner used his position

as an admissions office employee at Florida State University to drop her and her

brother's classes at FSU without their knowledge, *id.* at 28-29, she obtained a

temporary restraining order against Petitioner on January 19, 2007.  *Id.* at 30.

Despite the restraining order, on January 20, 2007, Petitioner contacted J.D.

through a third party and a relay service at i711.com to send threatening messages

to J.D.  *Id.* at 29-30.  He later pressured the third party to disconnect from the

i711.com site and to not provide the police with a report, which led to a charge of

witness tampering in 2008 CF 781.  He also appeared at a bar, A.J.'s, which was

listed in the injunction as off-limits and stared at J.D., causing her to alert the police.

ECF Doc. 16-10 at 32-34.

Petitioner was later convicted on two counts of criminal use of personal

identification information in 2008 CF 4221 relating to the dropping of classes, and

---

[2] This statute provides: "A person who, after an injunction for protection against repeat violence, sexual violence, or dating violence pursuant to s. 784.046, or an injunction for protection against domestic violence pursuant to s. 741.30, or after any other court-imposed prohibition of conduct toward the subject person or that person's property, knowingly, willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person commits the offense of aggravated stalking."

on September 28, 2009, he was sentenced to 11 months and 29 days in county jail, 2 years of community control, and 2 years of probation after the community control. He was ordered to have no contact with the victims or their families.  Petitioner was also convicted, in 2010, in case 2008 CF 781, of tampering with a witness – the third party he had caused to send the threatening messages to J.D.  He was sentenced to 10 months in county jail, followed by 2 years of community control followed by 2 years of probation, with the probation concurrent with 2008 CF 4221.  He was again ordered to have no contact with J.D.

While he was in jail, however, he continued to have contact with, and harass, J.D.  In 2010, J.D., by then employed by a law firm in Miami, began receiving letters and phone calls at her office from prison inmates who were relaying threats from Petitioner.  ECF Doc. 16-10 at 39-41.  Later, an investigator from the Florida Department of Corrections called to relay that prison officials had found among Petitioner's cellmate's belongings a letter to Petitioner attempting to blackmail him by threatening to tell authorities that Petitioner had told him he would kill J.D. when he was released.  *Id.* at 41-42; ECF Doc. Doc. 16-13 at 2; ECF Doc. 16-11 at 467 (copy of cellmate letter).  While the threat may not have been legitimate, J.D. found it credible because other cellmates had written to her relating details that only she and Petitioner would have known.  ECF Doc. ECF Doc. 16-10 at 43-44.  The cellmate included the address of J.D.'s employer so, when the news of the threat,

and that Petitioner had been released, reached her firm, the firm's office had to be evacuated. ECF Doc. 16-10 at 41-42.

Petitioner was released from county jail in 2010 but was convicted of repeatedly violating the GPS monitoring provisions of his supervision. ECF Doc. 16-11 at 278-88. He was sentenced to 5 years' imprisonment followed by 2 years community control followed by 2 years of probation. He was again ordered to have no contact with J.D. He entered FDOC custody on December 22, 2010, and was released December 1, 2013.

In July of 2011, Petitioner mailed J.D. a letter notifying her that he was filing a motion to relax the injunction against him.[3] The letter mentioned personal issues, including wishing J.D. a happy birthday. ECF Doc. 16-11 at 412; ECF Doc. 16-10 at 40. J.D. testified the letter "a hundred percent" upset her: "I was 20 years old when I met him. And I'm 29 years old and an attorney. And this has haunted me my -- since, since that day, right. I just -- I can't escape it. I've tried to, to do right. And I just, you know, you think you go about your life and you get this. And it's just like it will never stop." *Id.*

In March of 2012, Petitioner sent a personal letter from prison to J.D. despite the no-contact orders. According to the probable cause affidavit filed January 3,

_____

[3] During the bench trial, J.D. stated that the letter was sent in 2010 rather than 2011, and the letter itself is dated July 13, 2010, but refers to an upcoming hearing that took place in 2011. ECF Doc. 16-10 at 39 & ECF Doc. 16-11 at 413.

2014, J.D. received from Petitioner a collection of letters in which he had enclosed clippings of magazine stories and advertisements for women's perfume, clothing and jewelry on which he had written things like "this would smell good on you baby. We should wear these fragrances, one for you and one for me. Sean XOXOXO." *See* affidavit in Case No.: 2014 CF 17.  In a rambling, 7-page love letter sent from Bay Correctional Institution, Petitioner reminisced about their relationship and reflected on the "strong mental, emotional, spiritual and physical connection" they shared and wrote that he "would never choose just any woman to be the mother of my children, so you should consider yourself special (maybe)."  ECF Doc. 16-10 at 51-52 (J.D.'s testimony); ECF Doc. 16-11 at 424, 425-430 (letters) and 431-447 (clippings).

Finally, in 2013, Petitioner filed a Florida Bar complaint against J.D., which included direct communications to J.D. and attempted to coerce her into dismissing the claims against him.  ECF Doc. 16-11 at 449-66.  The Bar complaint is discussed in more depth in relation to Ground Three.

Based on this course of harassing conduct from January 2007 to October 2013, Petitioner was charged in Leon County Circuit Court (Case Number 2014 CF 17 with Aggravated Stalking After Court Order, in violation of Florida Statute § 784.048(4).  ECF Doc. 16-2 at 1.  A bench trial was held on April 6, 2015, along

with a hearing on Petitioner's violations of probation.[4]  ECF Doc. 16-10.  The trial judge entered a written finding of guilt on April 20, 2015.  ECF Doc. 16-12. Petitioner was sentenced to a term of 5 years for the aggravated stalking charge. ECF Doc. 16-16.

### B.    Postconviction History and Timeliness

Petitioner appealed his judgment and sentence, and the First District Court of Appeals ("First DCA") affirmed *per curiam* and without written opinion, on January 9, 2017.  ECF Doc. 16-21.  Petitioner filed petitions for writ of certiorari and the United States Supreme Court denied relief on December 4, 2017, *Id.* at 19-20.

On March 2, 2018, Petitioner filed a motion asserting ineffective assistance of appellate counsel.  ECF Doc. 16-22.  That motion was denied on January 9, 2020. *Reilly v. State*, 286 So. 3d 739 (Fla. 1st DCA 2020).  In the meantime, on October 25, 2018, Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, ECF Doc. 16-23, which was denied on January 15, 2020, ECF Doc. 16-24, and affirmed on appeal.  *See* Case No.: 1D20 0400.  The mandate was issued on October 30, 2020.

---

[4] The new law violation resulted in a violation of probation in cases 2008 CF 4221 and 2008 CF 781.

Petitioner filed the instant petition on May 24, 2021. There is no dispute the petition is timely as it was filed within one year of final judgment.[5]

## II.    LEGAL STANDARDS

Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419 (2014). "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Id.*; *Casey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially

---

[5] Under the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), 28 U.S.C. § 2254, a habeas petition must be filed within one year of certain trigger dates. For purposes of this petition, the relevant date is the date of final judgment. *Id.* at § 2254(d)(1)(A). The one year period is tolled for properly filed and pending post-conviction motions. *Id.* at § 2254(d)(2). Here, the judgment became final on December 4, 2017, and thus the one-year period ran for 87 days until March 2, 2018. The limitations period was then tolled until October 30, 2020, before running another 205 days when the petition was filed.

indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Among other grounds, Petitioner seeks relief based on various instances of alleged ineffective assistance of trial counsel ("IATC"). To succeed on an IATC claim, Petitioner must show that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689. The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations the petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III.   DISCUSSION

> **A.   Ground One: IATC for advising Petitioner to Abandon the Motion *in Limine* to Exclude Similar Fact Evidence, Waive His Right to Jury Trial on the Aggravated Stalking Offense, and Proceed to a Bench Trial Simultaneously with the Probation Revocation Proceedings in 2008 CF 4221.**

In Ground One, Petitioner alleges trial counsel was ineffective for advising him to abandon a pre-trial motion *in limine* seeking to exclude similar fact (or

*Williams* rule)[6] evidence, waive his constitutional right to a jury trial on the aggravated stalking offense, and proceed with a bench trial on the charges alleged in Case No. 2014 CF 17 at the same time as the probation revocation proceedings.

Petitioner raised this ground for relief in his post-conviction motion, which was denied by the circuit court and affirmed on appeal. Specifically, the circuit court found that trial counsel was not ineffective with regard to the motion *in limine*, because that motion was not abandoned.[7] Instead, the court held a hearing and reserved ruling. This conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

The record shows counsel vigorously argued for the exclusion of the similar acts evidence both in the motion *in limine* and in an objection each time the prosecution attempted to introduce such evidence. ECF Doc. 16-23 at 35; ECF Doc. 16-24 at 6-9. For example, when the State started to introduce testimony concerning

---

[6] The "Williams Rule" comes from the Florida Supreme Court's decision in *Williams v. State of Florida,* 110 So.2d 64 (Fla. 1959) and is codified in Fla. Stat. § 90.404(2). Under the Williams Rule, evidence of prior similar crimes is admissible to prove a series of crimes were carried out in a similar fashion to prior charges by the same defendant. *See* § 90.404(2)(a) ("Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.").

[7] Because the First DCA affirmed the denial of Petitioner's 3.850 motion without written explanation, ECF Doc. 16-27, this Court will "look through" that decision to the above language, which represents the last related state-court decision that provides a relevant rationale and presume that the unexplained First DCA decision adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

a January 2007 temporary injunction against Petitioner, counsel objected, *id.* at 18; counsel again objected to discussion of a final injunction on April 12, 2007, *id.* at 20 & 25; counsel objected to the admission of the police report from when Petitioner dropped the victim's classes, *id.* at 22 & 23; counsel objected when the state introduced a no-contact order of January 26, 2007 and Petitioner's violation of that by going to a bar called A.J.'s on February 7, 2007, *id.* at 27 & 30. In fact, defense counsel objected at least nine times to the inclusion of evidence preceding the letter from the jail in 2012 and the bar complaint. *See* ECF Doc. 16 at 35 (providing cites to defense counsel's objections). Thus, the state court correctly determined the motion *in limine* was not abandoned.

Regardless, the reason the motion *in limine* was denied was not because of counsel's ineffectiveness, but because evidence Petitioner had stalked J.D. on prior occasions was direct evidence of the crime charged; it was not collateral evidence. The original Information, filed January 22, 2014, charged Petitioner with aggravated stalking after court order only from July 13, 2010 to October 9, 2013. The State, on April 30, 2014 gave notice that it intended to introduce evidence of the conduct which gave rise to Petitioner's previous seven (7) cases involving his treatment of J.D., which took place from 2007 to 2010. ECF Doc. 3. In response, Petitioner's counsel, on September 9, 2014, filed a motion *in limine*, seeking to exclude "introduction of evidence from seven (7) prior cases" because the facts relating to the prior cases constituted "collateral crime evidence that is not the subject of the

instant offense nor does the introduction of said evidence serve to prove or disprove any element of the offense." ECF Doc. 4. On October 28, 2014, however, the State amended the Information to charge a course of aggravated stalking lasting between "January 19, 2007 and October 9, 2013." ECF Doc. 2. Thus, the conduct underlying the convictions from 2007 to 2010 was no longer collateral evidence; it was direct evidence of the crime in the Amended Information in 2014 CF 17.

The circuit court also found trial counsel was not ineffective with regard to proceeding to a bench trial on the new law violation along with the violation of probation hearing because "trial counsel would not have been entitled to any change in the court schedule" and the possibility Petitioner would have been found innocent at separate hearings was "entirely speculative." ECF Doc. 16-24 at 2-3. This conclusion was also not contrary to law or a misapplication of the facts.

Petitioner cannot show counsel's advice, even if deficient, was prejudicial to him because his assertion that the outcome of the trial would have been different if a jury, and not a judge, had heard the same evidence, is based on "pure speculation, and highly strained speculation at that," which is insufficient to justify habeas relief. *Johnson v. Alabama*, 256 F.3d 1156, 1183 (11th Cir. 2001). Indeed, Petitioner's argument is premised on the flawed assumption that a jury trial would have been better because the jury would not have been presented with evidence regarding Petitioner's prior incidents of stalking. As discussed above, this evidence, which was not collateral but went to the charged offense, was admissible, and, thus, just as

the judge considered it at the bench trial, the jury would have also been able to consider it.

**B.    Ground Two: IATC for Failing to Argue During Motion for New Trial That State Failed to Prove the "Substantial Emotional Distress" Element from Aggravated Stalking Charge**

In Ground Two, Petitioner argues counsel was ineffective for failing to argue in his motion for new trial that the evidence was insufficient to prove an element of aggravated stalking – that Petitioner's conduct caused J.D. "substantial emotional distress."   ECF Doc. 21 at 4.  As discussed below, Petitioner did not exhaust this claim and it is procedurally defaulted.

Petitioner admits he did not raise this specific claim to the state court and relies on *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1209 (2012) to excuse this failing. *Martinez* recognized a limited, equitable qualification to the exhaustion rule in habeas cases where (1) a state requires a prisoner to raise an ineffective assistance of trial counsel claim in a collateral proceeding, (2) the state court did not appoint counsel in the initial-review collateral proceeding, or appointed counsel in the initial-review collateral proceeding was ineffective under the standards of *Strickland* and (3) the underlying ineffective assistance of trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.  *Id.* at 14.  For the reasons which follow, the claim here is not substantial, however.

First, counsel was not deficient, and Petitioner was not prejudiced, by the failure to make this specific argument in the motion for new trial because the record

reveals no reasonable probability the trial judge would have granted a new trial based on this argument. Indeed, the trial judge rejected a nearly identical argument in the defense's motion for judgment of acquittal. ECF Doc. 16-10 at 161-76. Also, in the order denying the motion for new trial that was made by counsel, the trial judge noted that Petitioner's behavior was "calculated and designed to put the victim in fear" – a statement which clearly shows the court believed the State had presented evidence of substantial emotional distress. ECF Doc. 16-14; *see Cunningham v. Sec'y of Dep't of Corr.*, 2019 WL 11690487, at *14 (M.D. Fla. Apr. 22, 2019) (finding no reasonable probability that same judge who ruled that "the jury's verdict is consistent with the manifest weight of the evidence" would have granted a motion for a new trial based on the weight of the evidence).

Second, J.D.'s testimony supported a determination that she suffered substantial emotional distress from Petitioner's harassment. For example, in describing her family's efforts to stop Petitioner's harassment, J.D. testified that they "were all terrified." ECF Doc. 16-10 at 20. J.D. testified that the graphic, violent threats in the i711.com text-to-speech message from Petitioner to J.D. in 2007 was "so bad that the operator says, ma'am, I just want to let you know, like, you don't have to listen to this. We can stop at any point." *Id.* at 31. She testified that after seeing him at AJ's (where he was not supposed to be), she was "shaking" and had to be calmed down by her friends. *Id.* at 34.

Later in the trial, after the prosecutor showed J.D. a copy of the letter and clippings Petitioner sent her in early 2012, J.D. repeated how the receipt of those items made her "emotional" because they were "terrifying," "absolutely terrifying." ECF Doc. 16-10 at 51-52; *see also, id.* at 39-40 (J.D. describes Petitioner's actions as "haunting" her); *id.* at 42 (describing getting the cellmate letter as "horrible," "embarrassing, heart wrenching, terrifying"). Given the evidence presented, there is simply no reasonable probability that the trial judge would have granted a new trial had counsel specifically re-raised the issue in the motion for new trial. Petitioner is not entitled to relief on Ground Two.

**C.    Ground Three: Trial Court Error in Finding That Petitioner's Statements in His Florida Bar Complaint Constituted Aggravated Stalking Rather Than Legitimate First Amendment Protected Speech.**

In Ground Three, Petitioner argues the Florida Bar complaint he filed against J.D. was protected speech under the First Amendment since "[a]ll citizens have a constitutional right to petition the Government for a redress of grievances." According to Petitioner, the Bar complaint therefore should not have been used by the State as a predicate incident to prove the essential element of harassment in Petitioner's aggravated stalking case. ECF Doc. 21 at 6. As explained below, the state court's rejection of this claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

Respondent argues that Petitioner procedurally defaulted this First Amendment claim by failing to contemporaneously pose an objection to the Bar complaint's admission during the trial based on the First Amendment. ECF Doc. 16-19 at 30-31 (citing *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982) (holding that "in order for an argument to be cognizable on appeal, it must be the specific contention asserted as the legal ground for the objection, exception, or motion below"); *State v. Currilly*, 126 So. 3d 1244, 1245 (Fla. 1st DCA 2013) (holding that in order to adequately preserve an issue for appeal, an argument must be "sufficiently precise so as to fairly apprise the trial court of the relief sought and the grounds therefor")). Instead, the objection counsel raised was based on relevance. Therefore, Respondent argues Petitioner failed to preserve this issue for appellate review and is procedurally barred from raising it here.

The undersigned disagrees. Petitioner filed a motion to dismiss in which he argued the Bar complaint was "constitutionally protected speech" which "may not be used" by the State to prove stalking. ECF Doc. 16-7 at 5. The state court denied the motion after a hearing on April 6, 2015. *See* Court Minutes, Docket No. 99 in 2014 CF 17. Therefore, Petitioner did not need to make repeated futile contemporaneous objections at trial to preserve this issue for appeal. *See Mitchell v. State*, 306 So. 3d 255, 257 (Fla. 3d DCA 2020) ("Mitchell presented his objection and argument against the admission of the *Williams* evidence prior to trial. Because the trial court issued a definitive ruling on the record admitting the *Williams* evidence

prior to trial, Mitchell was not required to lodge a contemporaneous objection in order to preserve the issue for this Court's review.").

Although Petitioner exhausted this claim, it fails on the merits. In denying this claim, the circuit court distinguished the cases cited by Petitioner recognizing that official complaints can be protected speech and found that "Defendant's petition to the Bar included a letter that spoke directly to the victim. The Defendant knew that his message contained within the letter to the Bar would be transmitted to the victim. The Defendant used the Bar as a conduit to communicate with the victim, a clear violation of the order of no contact." ECF Doc. 16-14 at 2. The state court then recognized the constitutional rights of the Defendant but noted, "Just as a person is not free to yell 'Fire!' in a crowded theater, Defendant here is not free to violate a court order specifically designed to provide protection to an identified victim. More pointedly, he cannot use a claimed constitutional right to mask his real intent to get around the court order and contact the victim." *Id.* The trial court's rejection of this claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d)

The Bar complaint was not protected by the First Amendment because it was a tool used by Petitioner to communicate with the Petitioner and to harass Petitioner. In various cover letters, he communicated with J.D. directly, cajoling her to dismiss the criminal case against him in return for him dropping the Bar complaint. *Id.* at 461. Petitioner stated, "So that J.D. does not have a blemish on her record I will

voluntarily dismiss this complaint, if she will voluntarily dismiss the criminal complaint." However, he noted that "If we can't agree" he would continue with the Bar disciplinary process. Also, he further referred to J.D. directly, "Come on, I'm 30-years old now, my hair is graying, life is passing by; can we enjoy it in peace? Please let me know if we can come to terms on this and have some peace in our lives." *Id.* These comments were not simply to the Bar, but were directed at J.D., in violation of the no-contact order.

Moreover, Petitioner did not raise any legitimate claims in the Bar complaint. Instead, Petitioner claimed, without evidence, that J.D. and the prosecutor had conspired to put him in prison because J.D. was Petitioner's bitter, spurned lover. ECF Doc. 16-11 at 464-65. He makes numerous personal attacks on J.D., painting her as an evil, vindictive woman out to ruin his life, taking pleasure from his misfortune and using her position as an attorney improperly. *Id.* at 457-461, 463-466. His allegations were completely at odds with the findings of the various courts that had convicted and sentenced him. Petitioner is not entitled to relief on Ground Three.

> **D.    Grounds Four, Six and Seven: Trial Court Error in Finding Venue, Denying Motion for Judgment of Acquittal Based on Insufficiency of Evidence of Aggravated Stalking and in Considering Death Threat Not Attributed to Petitioner as Proof of Aggravated Stalking**

Grounds Four, Six, and Seven are discussed together because, as explained below, Petitioner failed to fairly present these Grounds as federal issues on appeal in state court. Therefore, he did not exhaust these claims.

Before a federal court can grant habeas relief, a petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Henderson v. Brewster*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). To exhaust a claim, a petitioner must present the state court with both the particular legal basis for relief and the facts supporting the claim. A petitioner must alert the state court that he is raising a *federal* claim and not just a state law claim. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

Here, in Ground Four, Petitioner argues that his Sixth Amendment rights were violated when the trial court denied his motion for judgment of acquittal because the State had failed to prove venue in Leon County. ECF Doc. 21 at 7. However, in Issue I of his Initial Brief on Appeal, he simply argued that the denial of his venue

argument violated state law. ECF Doc. 16-17 at 26-31. He did not mention the Sixth Amendment or cite to any federal case, statute or constitutional provision.

Similarly, in Ground Six, Petitioner argues the trial court violated his federal due process rights by denying a judgment of acquittal when there were too few incidents of contact between him and J.D. to prove aggravated stalking under Florida law. However, in Issue III of his Initial Brief on Appeal, Petitioner simply argued the trial court's denial of the motion violated state law. ECF Doc. 16-17 at 35-42. Petitioner did not mention federal due process or cite to any federal case, statute or constitutional provision.

Finally, in Ground Seven, Petitioner argues the trial court violated his due process rights by admitting evidence of a letter written by an inmate and addressed to Petitioner attempting to extort Petitioner by threatening to reveal a plot by Petitioner to kill J.D. However, in Issue IV of his appellate brief, Petitioner did not mention federal due process or cite to any federal case, statute or constitutional provision. Instead, he relied exclusively on Florida cases and statutes. ECF Doc. 16-17 at 43-48.

Petitioner has therefore failed to exhaust these grounds for relief and is procedurally barred from doing so now in state court.[8] Petitioner has therefore

---

[8] *See* Fla. R. App. P. 9.140(b)(3) (notice of direct appeal must be filed "at any time between rendition of a final judgment and 30 days following rendition of a written order imposing sentence"); *Skeens v. State*, 853 So. 2d 494, 495 (Fla. 2d DCA 2003) (applying thirty-day limit to

procedurally defaulted these grounds for relief and is barred from seeking relief on them in a federal petition, "unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Petitioner has presented no argument supporting a finding of the cause and prejudice or fundamental miscarriage of justice exceptions. Therefore, Petitioner is not entitled to habeas relief on these grounds.

### E.    Ground Five: IATC for Failing to Argue Lack of Venue

In Ground Five, Petitioner argues trial counsel was ineffective for not arguing a lack of venue because the State failed to prove venue lay in Leon County. However, because venue was proper in Leon County, counsel did not perform deficiently, and Petitioner was not prejudiced counsel's failure to raise a meritless venue argument.[9]

Petitioner argues that "[t]he only substantive act that took place in Leon County was the incident at AJ's Sports Bar." ECF Doc. 21 at 7-8. This assertion is simply incorrect; numerous acts of aggravated stalking occurred in Leon County. First, Petitioner admits he violated a January 19, 2007, temporary injunction against

---

direct appeal); Fla. R. Crim. P. 3.850(k) (requiring, in order denying 3.850 motion, "a statement that the defendant has the right to appeal within 30 days of the rendition of the order"); *Hollinger v. Sec'y Dep't of Corr.*, 334 F. App'x 302, 304 (11th Cir. 2009) (per curiam) (applying thirty-day time to appeal the denial of a Rule 3.850 motion).

[9] Petitioner did not argue this ground in his Rule 3.850 motion, but relies on *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1209 (2012) to excuse this failing. *See, supra,* section III.B. (addressing Ground Two) for a discussion of *Martinez*. As explained below, this claim is not a "substantial one" under *Martinez*.

Petitioner issued by a court in Leon County by appearing at AJ's Bar, which occurred in Leon County. Also, Petitioner's later contacts with J.D. also violated court orders issued in Leon County Case No. 2008 CF 4221, in which he was convicted of Criminal Use of Personal Identification stemming from his dropping J.D.'s classes in 2006. In that case, the Leon County Circuit Court ordered as a special condition of Petitioner's community control and probation supervision, that he have "no contact" with J.D. and her family. ECF Doc. 16-19 at 18. Petitioner's ensuing illegal contacts with J.D. all violated these Leon County injunctions and court orders. For example, while his cover letter to his Motion to Relax Injunction, which wished J.D. a happy birthday and addressed her directly, was sent from Bay CI in Panama City to Miami, it violated injunctions or orders issued by Leon County Courts. Likewise, the rambling, 7-page love letter from prison – in which he reminisced about their relationship and reflected on the "strong mental, emotional, spiritual and physical connection" they shared and wrote that he "would never choose just any woman to be the mother of my children, so you should consider yourself special (maybe)" – also violated the orders of Leon County Courts. Finally, the specious Florida Bar complaint in which Petitioner engaged in personal contact which exceeded any legitimate purpose was filed in Leon County.

Thus, the trial court did not err in finding the State presented competent substantial evidence to enable the trial court to find that Petitioner's offense was committed in Leon County, and counsel was not ineffective for declining to raise a

meritless venue argument. *See e.g., Freeman v. Att'y Gen.,* 536 F.3d 1255, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

F.    **Ground Eight: Vindictive Prosecution in Violation of Petitioner's Due Process Rights in retaliation for his filing of a Florida Bar complaint.**

In Ground Eight, Petitioner argues his constitutional right to due process was violated when the State Attorney prosecuted him, "not to seek justice, but rather to retaliate against Petitioner for filing a Florida Bar Complaint" against J.D. and two other attorneys. ECF Doc. 21 at 14-15. For the reasons below, this ground is procedurally defaulted.

This Court will consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734–35 & n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). Specifically, the rule from *Brown v. State*, 596 So. 2d 1026, 1028 (Fla. 1992), barring from 3.850 review issues that could have been raised on direct appeal, has been found by the Eleventh Circuit to be an adequate and independent state ground. *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 (11th Cir. 2005) (3.850 court's refusal to consider the defendant's issues that could have been raised

on direct appeal as procedurally barred rested on an independent and adequate state ground that precludes federal habeas consideration of this issue.)

Petitioner did not raise the vindictive prosecution issue before trial, at trial or on appeal. ECF Doc. 16-17. He raised it only in a 3.850 motion filed on October 25, 2018. ECF Doc. 16-23. The state court rejected this claim based on procedural bar: "This claim 'could have or should have been raised at trial and, if properly preserved, on direct appeal' and cannot now be brought in postconviction." Order Denying Defendant's Motion for Postconviction Relief, ECF Doc. 16-24 at 5 (quoting Fla. R. Crim. P. 3.850(c)). Therefore, the state court's finding of procedural default precludes federal habeas consideration of this issue.

## IV.   CONCLUSION

### A.    Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 574.

### B.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this Report and Recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.    That the amended petition under 28 U.S.C. § 2254, ECF Doc. 21, be

DENIED without an evidentiary hearing.

2.    That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

At Pensacola, Florida, this 21st day of September, 2023.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.